**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Carolina Casualty Insurance Company,<br><br>                          Plaintiff,<br>          - *against* -<br><br>Capital Trucking, Inc., Robert G. Anderson,<br>Diane C. Anderson,<br><br>                       Defendants.<br><hr>Robert G. Anderson, Diane C. Anderson,<br><br>              Counterclaim Plaintiffs,<br><br>       - *against* -<br><br>Carolina Casualty Insurance Company & Imperium<br>Insurance Company, f/k/a Delos Insurance Company,<br><br>             Counterclaim Defendants. | **18 Civ. 10871 (PED)**<br><br>**DECISION**<br>**AND ORDER** |

**PAUL E. DAVISON, U.S.M.J.:**

## I.  INTRODUCTION

Plaintiff Carolina Casualty Insurance Company ("Carolina") commenced this action for declaratory relief against Defendants Robert and Diane Anderson.  [Dkt. 7.]  The Andersons commenced a third-party action against third-party Defendant Imperium Insurance Company, f/k/a Delos Insurance Company ("Imperium") and asserted counterclaims against Carolina.  [R. 20.]  Before me are cross-motions for summary judgment filed by the Andersons [Dkt. 77] and Carolina [Dkt. 84], and a motion to dismiss filed by Imperium [Dkt. 81].  Oral argument was held on January 12, 2021.  For the reasons that follow, the Andersons' motion is **GRANTED** in part and **DENIED** in part.  Carolina's motion is **GRANTED** in part and **DENIED** in part.  Imperium's motion is **GRANTED**.

## II.  BACKGROUND

The facts are largely undisputed.  This case arises from an collision between a passenger vehicle driven by Defendant Robert Anderson and a tractor-trailer driven by Constantin Bagiu on November 1, 2010.  The tractor, a 2005 Freightliner bearing Illinois license plate number P678944, was owned by Marius Pandaru and leased to Capital Trucking, Inc., an Illinois corporation insured by Carolina.  The trailer was owned by Adrian Goia and leased to Trucker's Association of Chicago, LLC, an Illinois corporation insured by Imperium.

The Andersons commenced an action in New York State Supreme Court, Orange County, on April 8, 2013 against Bagiu, Pandaru, Goia, Capital Trucking, and Trucker's Association of Chicago.  Each of the state court defendants, as well as Carolina on behalf of Capital Trucking, tendered their defenses to Imperium, which accepted.  Following competing motions for summary judgment, the state court issued a decision holding, in relevant part, that Bagiu was negligent and 100 percent at fault for the collision.  [Dkt. 35-1.]  The state court also held that Bagiu was a statutory employee of both Trucker's Association of Chicago and Capital Trucking, and that each could be held liable for Bagiu's negligence under 49 C.F.R. § 390.5.

Following the state court's decision, the Andersons made a demand of $1 million to Imperium and $750,000 to Carolina.  In response, Imperium offered $993,434.32, the remaining limit of Imperium's $1 million insurance liability coverage for the collision.  Carolina rejected the demand, maintaining that the insurance policy it issued to Capital Trucking did not apply to the tractor involved in the collision, and that Capital Trucking's liability should be covered under Imperium's insurance policy pursuant to the tender of defense.  Carolina further maintained that the MCS-90 endorsement, which was attached to Carolina's insurance policy to Capital

2

Trucking as mandated by the Motor Carrier Act of 1980, did not require Carolina to provide

coverage to Capital Trucking for the collision.  *See* 49 C.F.R. § 387.7.

Carolina seeks declaratory relief that the insurance policy it issued to Capital Trucking

does not cover the subject tractor and, therefore, does not provide coverage for the collision.

Carolina also seeks declaratory relief that the MCS-90 endorsement it issued to Capital Trucking

does not require Carolina to provide coverage.  The Andersons seek declaratory relief that

Carolina's insurance policy does cover the subject tractor and collision or, in the alternative, that

the MCS-90 endorsement requires Carolina to provide certain coverage.  The Andersons also

assert claims of fraud and civil conspiracy against Carolina and Imperium.  Imperium moves to

dismiss the Andersons' claims against Imperium.

### III.   LEGAL STANDARD

#### A.      Standard for Summary Judgment

Summary judgment may be granted only "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material

fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

"[I]n assessing the record to determine whether there is a genuine issue as to a material

fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in

favor of the party against whom summary judgment is sought."  *Sec. Ins. Co. of Hartford v. Old

Dominion Freight Line, Inc*., 391 F.3d 77, 83 (2d Cir. 2004).  If there is admissible evidence in

the record as to any material fact from which an inference could be drawn in favor of the non-

movant, summary judgment is unavailable.  To this end, the district court is charged under Rule

56 with the function of "issue-finding," and not "issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). "The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury." *Gomez v. Pellicone*, 986 F. Supp. 220, 225 (S.D.N.Y. 1997) (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994); and *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994)).

The burden of showing that no genuine issue of material fact exists rests on the movant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

> When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of material fact for trial in order to avoid summary judgment.

*Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," *Anderson*, 477 U.S. at 256, and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## B.      Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (citing *Twombly*, 550 U.S. at 557).

### C.     Standard for Declaratory Relief

The Declaratory Judgment Acts states:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

"[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Because federal courts may only adjudicate "Cases" and "Controversies," an actual controversy must be extant at the time the complaint is filed and throughout all stages of the litigation.  *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (citing *Alvarez v. Smith,* 558 U.S. 87, 130 (2009)).  The controversy must at all times remain definite and concrete and must touch the legal relations of the parties having adverse legal interests.  *Id.* (citing *MedImmune Inc.*, 549 U.S. at 127).

"Throughout the litigation, the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Id.* (citing *United States v. Juvenile Male,* 564 U.S. 932, 936 (2011)).  As with any federal action, courts may not entertain actions for declaratory judgment "when the parties are

asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." *Id.* (citing *Flast v. Cohen,* 392 U.S. 83, 95 (1968)).

## IV.   DISCUSSION

### A.      Application of the Carolina Insurance Policy

Carolina seeks summary judgment as to its first cause of action, which seeks declaratory relief that its insurance policy issued to Capital Trucking does not apply to the collision between Bagiu and Robert Anderson.  The Andersons seek summary judgment on their third cause of action, which seeks declaratory relief that the insurance policy does apply.

This matter is proper for summary judgment because there are no material facts in controversy related to either cause of action, which the parties agree should be determined based solely on the relevant contract language.  Moreover, this matter presents a justiciable controversy appropriate for declaratory relief, insofar as this matter would determine the Andersons' ability to claim up to $1 million in insurance coverage from Carolina.  *See E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001) (justiciable controversy existed where insurer challenged applicability of insurance policy).

The Carolina insurance policy does not contain an express choice-of-law provision. Nevertheless, the parties agree that Illinois law should govern its interpretation.  In diversity jurisdiction cases, it is well settled that a federal court must look at the choice of law rules of the forum state.  *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).  In New York, courts must first ask if there is an actual conflict of laws.  *Id.*  If a conflict exists concerning a contract dispute, including insurance agreements, New York courts apply a "center of gravity" test.  *See Standard Gen. L.P. v. Travelers Indem. Co. of Connecticut*, 261 F. Supp. 3d 502, 506 (S.D.N.Y.

6

2017) ("For insurance contracts, the applicable law is typically that of the principal location of the insured risk.  If the policy covers risks in multiple states, however, then the state of the insured's domicile…is the 'controlling factor' in determining the applicable law.") (internal citations omitted).

In New York, interpretation of an insurance agreement is a question of law governed by general rules of contract.  *See, e.g.*, *Crescent Beach Club LLC v. Indian Harbor Ins. Co.*, 468 F. Supp. 3d 515, 540 (E.D.N.Y. 2020).  "The court must interpret the contract to give effect to the intent of the parties as expressed in the clear language of the contract."  *Id.* (internal citations omitted).  In Illinois, courts similarly defer to the plain language of insurance agreements.  "When analyzing an insurance policy, unless the language is ambiguous, we will construe the policy according to the plain and ordinary meaning of its terms."  *Frendreis v. Blue Cross Blue Shield of Michigan*, 873 F. Supp. 1153, 1155 (N.D. Ill. 1995) (internal citations omitted).  Illinois law, however, adds a presumption of strict contract interpretation and will "presume that the provisions are purposefully inserted and that language was not employed idly." *Id.* (internal citations omitted).

The laws of both states defer to the plain language of insurance agreements, but Illinois courts appear to apply a stricter presumption to the contract provisions.  Additionally, the parties agree that Illinois Law should apply when interpreting the relevant insurance agreements. Capital Trucking is an Illinois corporation, and its insurance policy through Carolina was negotiated and executed in Illinois.  The insurance agreement does not contain an express choice-of-law provision but does nevertheless make numerous references to Illinois law.  The Court, therefore, applies Illinois law.

Carolina issued a commercial transportation insurance policy to Capital Trucking on October 17, 2010, which was in effect at the time of the collision.  [Dkt. 7-2.]  The policy makes numerous references to the terms "auto" and "autos", quotation marks included.  It defines "auto," in relevant part, as "a land vehicle, 'trailer' or semitrailer designed for travel on public roads."  *Id.* at 21, Section VI(B)(1).  The parties do not contest that the subject 2005 Freightliner trailer would constitute an "auto" under this definition.

Under "Coverage," the Carolina policy states that Carolina will pay for "damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."  *Id.* at 11, Section II(A).  The term "covered auto" is not expressly defined.  However, under the "Schedule of Coverages and Covered Autos," the policy lists "67" as the "covered auto symbol."  *Id.* at 5, Item 2.  The policy uses numerical codes to categorize certain types of tractors and trailers.  The symbol "67" is defined as "Specifically Described 'Autos'," which are, "Only those 'autos' described in Item three of the Declarations…."  *Id.* at 10, Section I(a).  Item 3 of the declaration, the "Schedule of Covered Autos You Own," contains a list of 23 vehicles defined by type and VIN.  *Id.* at 6-8, Item 3.

The plain language of these sections appears to state that the Carolina policy only covers the vehicles that are expressly listed in Item 3.  The record does not contain the VIN for the subject tractor, but the parties agree that the vehicle involved was a 2005 Freightliner.  [*See* the Andersons' Answer, Dkt. 20 at 6; Carolina's Complaint, Dkt. 7 at 4.]  The Item 3 Schedule does not list a 2005 Freightliner.  The subject vehicle is not, therefore, a covered vehicle under the Carolina policy, based on a plain reading of the language.  This interpretation is consistent with Illinois law, which allows for insurance contracts to include language specifically listing which

8

vehicles may be covered under an insurance policy.  *See e.g. Founders Ins. Co. v. Am. Country Ins. Co.*, 851 N.E.2d 120, 126 (Ill. App. 2006).

The Andersons' remaining arguments lack merit.  First, the Andersons point to Section II(A)(1)(d), "Who is An Insured," to argue that Bagiu, by virtue of driving the 2005 Freightliner, would qualify as an insured under the Carolina policy, and that by extension, so too should the 2005 Freightliner.  This section states, in relevant part:

> The following  are "insureds": (d) The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement…

The Andersons argue that because the second reference to "auto" leaves out the word "covered," this clause extends coverage to the agents or drivers of any lessor of any automobile leased to Capital Trucking.  This interpretation is against the plain language of the contract.  The sentence clearly refers to *the* lessor of a covered vehicle, and the proceeding subordinate clause again refers to *the* lessor.  The reference in the subordinate clause is to the same as in the preceding clause: the lessor of a covered vehicle.  The Andersons argue that this section is ambiguous, but the language is clear: the lessor of a covered vehicle, as well as the agent and driver of that lessor, are covered under the policy.  Any other reading would lead to nonsensical results.  By the Andersons' interpretation, the lessor of a non-covered vehicle would not be covered under the policy, but that lessor's drivers and agents would be.  Here, this would mean that Pandaru, the lessor of the tractor, would not be covered as an insured, but Bagiu, who was hired by Pandaru as a driver, would be.

Second, the Andersons point to Section II(A)(1)(e), which states, "Anyone liable for the conduct of an "insured" as described above but only to the extent of that liability."  *Id.*  The Andersons explain that Capital Trucking was found by the state court to be a statutory employer

9

of Bagiu and, therefore, vicariously liable for Bagiu's negligence, and that Capital Trucking is an insured under the policy.

The Andersons' argument collapses under its own weight. Capital Trucking is the insured. Bagiu is not liable for the conduct of Capital Trucking; Capital is liable for the conduct of Bagiu. Therefore, this section does not mandate that Bagiu is an insured. Even if Bagiu was an insured, the state court's finding would merely convey that Capital Trucking would be an insured, which has already been established. The Andersons' argument is thus circular: the subject tractor should be covered by the Carolina policy because it was insured under the policy. The argument also fails.

Additionally, the Andersons' interpretation of Sections (d) and (e) of the Carolina policy, allowing for any and all vehicles to be covered under the policy, would render obsolete the entirety of the Declarations, as well as each and every reference to "covered" vehicles in the contract. Bearing in mind the presumption that contract language is "purposefully inserted" and "not employed idly," Carolina would insert such extension language into its contract defining which vehicles are covered and which are excluded, only to allow for each and every vehicle to be included. *See Frendreis*, 873 F. Supp. at 1155.

Finally, the Andersons take issue with the fact that Carolina's letter denying Capital Trucking coverage over the collision was dated March 30, 2017, approximately four years after the underlying state court litigation commenced. [*see* March 30, 2017 letter, Dkt. 76-10.] This argument is a red herring. What controls here is the contract language, and, as stated, the contract does not cover the subject vehicle. That an insurer denies coverage four years after an accident has no bearing on that issue.

The Andersons argue that an insurer waives a defense of "late notice" by failing to promptly inform its insured of the denial of coverage.  Under Illinois law, this defense deals with breach of contract claims and has nothing to do with coverage in the first instance.  Specifically, an insurer may deny coverage to an insured if the insured beaches its contract.  The insurer must promptly inform the insured about the breach of contract and resultant denial of coverage.  If the insurer fails to do so promptly, the insured may plead a defense of "late notice" and argue that the insurer waived its breach of contract claim against the insured.  *Twin City Fire Ins. Co. v. Old World Trading Co.*, 639 N.E.2d 584, 590 (Ill. App. 1993).  This defense is irrelevant here because Carolina denied coverage based on the fact that the vehicle was not covered under the insurance policy, not because Capital Trucking breached the insurance agreement.  That Carolina actually sent Capital Trucking a letter on December 9, 2013 denying coverage [*see* Dkt. 85-4], merely eight months following the commencement of the state court litigation, is similarly irrelevant.  Accordingly, summary judgment is granted as to Carolina's first cause of action and denied as to the Andersons' second cause of action.

### B.    Application of the MCS-90 Endorsement

Carolina's second cause of action seeks a declaration that the MCS-90 endorsement accompanying the Carolina insurance policy issued to Capital Trucking does not require Carolina to cover the collision.  Specifically, it argues that the MCS-90 endorsement does not create a suretyship obligation to Capital Trucking for the collision because the Imperium policy provides liability coverage to Capital Trucking and, therefore, satisfies Capital Trucking's minimum financial obligations.  The Andersons' third cause of action seeks a declaration that the MCS-90 endorsement does apply.

Summary judgment is appropriate as to these claims because there are no material issues

of fact in dispute and the questions can be determined as a matter of law.  Additionally, this matter presents a justiciable controversy and will determine whether the Andersons have a right to collect against Carolina on a monetary judgment entered against Capital Trucking.  *See generally Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*, Case No. 90 Civ. 2137 (LMM), 1990 WL 160674 (S.D.N.Y. Oct. 17, 1990), *aff'd*, 930 F.2d 258 (2d Cir. 1991) (granting declaratory relief as to the application of an MCS-90 endorsement).

The MCS-90 endorsement, mandated by Section 29 of the Motor Carrier Act of 1980, 49 U.S.C. § 10927 ("MCA"), requires an insurer to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance, or use of motor vehicles."  [MCS-90 endorsement issued to Capital Trucking, Dkt. 7-2 at 1.]  *Integral Ins. Co.,* 930 F.2d at 259.  It derives from the financial responsibility regulations promulgated by the Secretary of Transportation pursuant to the MCA.  *Id.* at 260 (citing 49 C.F.R. § 387.15).

The regulations require motor carriers to obtain minimum levels of security in the form of either insurance or a surety bond in order to protect the public in cases of injury.  *Id.* (citing 49 C.F.R. § 387.7).  At the time of the collision, the minimum value established by the Secretary of Transportation was $750,000.  49 C.F.R. § 387.9.  A Form MCS-90 Endorsement is one way for a motor carrier to establish its compliance with the financial responsibility requirements.  *Park Ins. Co. v. Lugo*, Case No. 13 Civ. 3567 (LGS), 2015 WL 1535791, at *4 (S.D.N.Y. Apr. 6, 2015).  Carolina issued an MCS-90 endorsement in addition to its insurance policy to Capital Trucking pursuant to these regulations.  [*see* Dkt. 7-2.]

The MCS-90 endorsement is interpreted under federal, and not state, law.  *Green v. Royal Indem. Co.*, Case No. 93 Civ 4335 (MBM), 1994 WL 267749, at *5 (S.D.N.Y. June 15, 1994).  The obligations under the MCS-90 endorsement apply to vehicles that are owned by the insured,

as well as vehicles they lease.  *Id.* at *6.  However, an insurer's obligation under the MCS-90 endorsement only triggers when a member of the public obtains a final judgment against the insured motor carrier for negligence, at which time the insured can compel the insurer for payment of the judgment up to the limit of the endorsement.  *Id.*  The MCS-90 obligation would also apply where the insured motor carrier is held liable vicariously for the negligence of another.  *Integral Ins. Co.*, 930 F.2d at 262.

The Second Circuit has discussed the applicability of an MCS-90 endorsement to similar albeit distinguishable facts.  In *Integral Ins. Co.*, the insurer provided a policy to the insured covering only vehicles listed on the schedule.  The policy included an MCS-90 endorsement, with language identical to Carolina's MCS-90 endorsement, extending coverage to all motor vehicles owned by the insured, regardless of whether the vehicle was listed on the schedule. *Integral Ins. Co.*, 930 F.2d at 260.  The Second Circuit held that the primary insurance policy did not apply, but the insurer would be obligated to indemnify its insured motor carrier under the MCS-90 endorsement.  *Id.* at 262.

However, in *Integral Ins. Co.* the injured plaintiff could not recover its judgment from another motor carrier, nor did there exist another insurance policy under which the insured could seek coverage.  Here, Carolina tendered Capital Trucking's defense to Imperium, who accepted Capital Trucking as an additional insured under its $1 million per incident policy.  Carolina thus argues that because Capital Trucking meets the federally mandated minimum requirements through Imperium's policy, the MCS-90 endorsement should not apply.  The Andersons disagree, arguing that each individual motor carrier must independently satisfy its financial obligations through its own policy, and that the insurance coverage of one motor carrier cannot

be used to satisfy the obligations of another carrier.  Whether the MCS-90 endorsement applies here is a matter of first impression in the Second Circuit.

Carolina relies on *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009) for the proposition that the MCS-90 endorsement does not trigger if the underlying motor carrier obtains the federally mandate minimum of primary insurance coverage from another source.  In *Yeates*, the plaintiff was involved in a motor vehicle collision with a tractor-trailer owned by Bingham Livestock, which had two separate insurance policies.  *Id.* at 871.  The first policy, issued by State Farm Insurance, specifically covered the truck involved in the accident up to a limit of $750,000.  The second policy, issued by Carolina, was a general liability policy that did not specifically cover the truck, and which included an MCS-90 endorsement.  *Id.*

The Tenth Circuit held that the MCS-90 endorsement was not triggered and that Carolina would not need to provide coverage for the collision.  *Yeates*, 584 F.3d at 888.  The Tenth Circuit reasoned that the MCS-90 endorsement was intended to act as a surety agreement and not as primary insurance coverage.  *Id.* at 880.  The Tenth Circuit noted that a motor carrier could pay a judgment itself or obtain payment from other insurance sources.  *Id.* at 881.  To that end, the Tenth Circuit found that, in general, an MCS-90 endorsement would only apply where the underlying insurance policy to which the endorsement is attached would not otherwise provide liability coverage, and where the motor carrier's other insurance coverage was insufficient to satisfy the federally-prescribed minimum levels of responsibility.  *Id.*  The court in *Yeates* concluded that, because State Farm provided adequate coverage for the subject vehicle, Carolina's MCS-90 endorsement did not apply.  *Id.* at 888.

The Andersons rely on *Fairmont Specialty Ins. Co. v. 1039012 Ontario, Inc.*, Case No. 10 Civ. 070, 2011 WL 3651333 (N.D. Ind. Aug. 19, 2011), which distinguishes *Yeates*.  In

14

*Fairmont*, the plaintiff was injured when his vehicle was struck by a tractor-trailer.  The driver was employed by 1039012 Ontario Inc., the lessee of the tractor-trailer.  Hummer Transportation, Inc. was the owner and lessor of the tractor-trailer.  *Id*. at *1.  A final judgment was entered against both Hummer and Ontario.  *Id.* at *2.

Hummer was insured by National Continental Insurance Company, which paid its policy limit on behalf of Hummer.  As a result, the court held that Hummer had satisfied its obligation.  *Fairmont*, 2011 WL 3651333, at *2.  However, the insurer for Ontario denied coverage, and the plaintiffs sought payment from Fairmont who had issued an MCS-90 endorsement to Ontario.  *Id.* at 2-3.  Fairmont moved for declaratory relief that the MCS-90 endorsement did not apply because National had already paid the plaintiffs under its policy.  *Id.* at *3.

As Carolina does here, Fairmont relied on *Yeates*, but the court made a key distinction.  *Yeates* involved a single motor carrier covered by multiple policies.  *Fairmont*, 2011 WL 3651333, at 4-5 (referring to *Yeates*, 584 F.3d at 879).  *Fairmont*, like the instant case, involved two separate motor carriers each with liability over the same collision.  *Id.* at *6.  The court in *Fairmont* held that in such case, each motor carrier is independently obligated to satisfy the federally mandated minimums and cannot look to another insurer to do so.  *Id.* at *7.

Following *Fairmont*, I agree with the Andersons that *Yeates* does not stand for the proposition advocated by Carolina.  Moreover, the Tenth Circuit has subsequently revisited *Yeates* and clarified its holding.  *See Herrod v. Wilshire Ins. Co.*, 499 F. App'x 753, 754 (10th Cir. 2012).  *Herrod* involved two motor carriers, Espenschied Transport and DATS Trucking, Inc.. *Id.* at 756.  Kimball Herrod was killed when a dual-wheel assembly came off of the axle of a tractor-trailer and struck him.  *Id.*  Espenschied owned the trailer which it leased to DATS, and DATS owned the tractor.  *Id.*

Herrod's estate settled with DATS, whose liability insurer agreed to pay on its behalf. *Herrod*, 499 F. App'x at 756 n.5.  The Herrods also settled with Espenschied, but its liability insurer, Wilshire Insurance Company, refused to pay, arguing that its insurance policy did not cover the accident, and that its MCS-90 endorsement did not apply.  *Id.* at 756-57.  Wilshire argued, as Carolina argues here, that under *Yeates*, the MCS-90 endorsement should not apply where recovery beyond the federally mandated minimum was available through an insurance carrier of another motor carrier.  *Id.* at 758.

The Tenth Circuit rejected this argument.  Clarifying its decision in *Yeates*, the Tenth Circuit explained:

> Accordingly, once the federally mandated minimum has been satisfied *as against a particular motor carrier,* either by virtue of the motor carrier's liability coverage or payment out of pocket, that particular motor carrier's MCS–90 endorsement does not apply. But what Wilshire seeks is to be relieved of any MCS–90 surety obligation simply because the Herrods received payment from another motor carrier, even though the judgment against Wilshire's insured, Espenschied, remains unsatisfied.
>
> We find no error in the district court's rejection of Wilshire's argument. Because the federally mandated minimum has not been met, as against Espenschied, Wilshire's MCS–90 endorsement (theoretically) is implicated.  Our holding is limited to the situation where, as here, a negligence judgment has been entered against a motor carrier and has not been satisfied as against that particular motor carrier. In that instance, the motor carrier's MCS–90 insurer may not evade payment of the judgment against its insured on the basis that the injured party has received compensation elsewhere.

*Herrod*, 499 F. App'x at 758.  Based on this reasoning, therefore, a motor carrier cannot satisfy its obligations under the regulations based on coverage from another motor carrier's insurer.  Put another way, *Herrod* and *Yeates* stand for the proposition that each individual motor carrier is obligated to meet the federally mandated minimum independently, regardless of coverage offered by another motor carrier.

Notably, the Seventh Circuit reached a similar conclusion in *Carolina Cas. Ins. Co. v. E.C. Trucking*, 396 F.3d 837, 840 (7th Cir. 2005). In *E.C. Trucking*, Eric Fort died when a tractor-trailer struck his vehicle. *Id.* at 840. E.C. Trucking owned the tractor, which it leased to Ryder Integrated Logistics. Ryder owned the trailer. *Id.* Carolina insured a third entity, C.W. Keller Trucking. Inc., which was owned by E.C. Trucking and a subtractor to Ryder, and which agreed to haul parts on behalf of Ryder. *Id.* Carolina intervened, seeking declaratory relief that its MCS-90 endorsement issued to Keller did not require it to provide coverage. Fort's estate settled with all defendants except for Keller. Specifically, Fort's estate entered into a loan receipt agreement with Ryder, agreed to dismiss the suit against the remaining defendants other than Keller, and agreed to pay one-third of the amount recovered from Keller, up to no more than $2.25 million. The jury later found Keller liable for $1.042 million. *Id.* at 840. The district court found, and the Seventh Circuit agreed, that Fort's estate could recover from Carolina on behalf of Keller through its MCS-90 endorsement. *Id.* at 840-41. The Seventh Circuit held that the loan receipt agreement did not satisfy Fort's judgment against Keller, and, as a result, the MCS-90 endorsement would apply. *Id.* at 842.

Carolina also relies on *Lyles v. FTL LTD., Inc., et al.*, 339 F.Supp.3d 570 (S.D. W. Va. 2018), which presents yet another scenario. There, the plaintiff was involved in a collision with a dump truck owned by K&K Trucking, Inc. and leased to FTL, Inc. Each company had a separate insurance policy issued by National Casualty Company, each containing a separate MCS-90 endorsement. *Id.* at 573. National Casualty Company agreed to defend FTL under the K&K policy but denied coverage under the FTL policy. Plaintiff settled with all defendants but sought additional coverage against FTL through the MCS-90 endorsement issued to FTL. *Id.* The court stated, "[w]hether the financial responsibility requirements apply thus depends on the

17

facts of the accident at issue." *Id.* at 576.  Accordingly, the court denied coverage on the basis that the truck in question was not engaged in interstate commerce at the time of the incident, operating solely in West Virginia during the accident.  *Id.* at 577-78.

The court went on to consider whether, even if the truck were engaged in interstate commerce, the MCS-90 endorsement would apply.  *Lyles*, 339 F. Supp. 3d at 578-79.  The court held that the MCS-90 endorsement did not apply.  First, the court reasoned that the nature of the trucking agreement between K&K and FTL was such that K&K was obligated to obtain $1 million of liability insurance and to include FTL as an additional insured, and FTL was listed as an additional insured under the K&K policy at the time of the accident.  *Id.* at 578-79.  Second, the settlement agreement was paid on behalf of both FTL and K&K.  Even though the plaintiff had reserved the right to seek "other coverage" as against FTL, the court found that the settlement payment had satisfied FTL's obligations to the plaintiff.  *Id.* at 579.  Relying on *Yeates*, the court reasoned, "The endorsement is a safety net in the event other insurance is lacking."  *Id.* (citing *Yeates*, 584 F.3d at 878).

The facts of the instant case differ from each case cited by Carolina and the Andersons. Here, the collision involved two motor carriers, each found statutorily liable for a single injury. A money judgment has not been entered against either motor carrier.  At the time of the collision, only one carrier, Trucker's Association of Chicago, was adequately insured.  The other carrier, Capital Trucking, was not insured at all, but for the MCS-90 endorsement.  After the collision, Imperium agreed to accept Capital Trucking's tender of defense and treat them as an additional insured.  Based on the case law as applied to these unique facts, the MCS-90 endorsement would apply in this case, such that Carolina would be held liable to reimburse Capital Trucking for any judgment entered against it.

18

It is clear from the case law reviewed above that the federally mandated insurance obligations of one carrier cannot be satisfied simply by virtue of the fact that an injured party recovers an award greater than the federal minimum from another party.  Put another way, the fact that the Andersons may recover just short of $1 million from Imperium does not automatically satisfy Capital Trucking's obligations.  Capital Trucking's obligation to maintain adequate insurance coverage when it engages in interstate commerce cannot be satisfied simply because another covered motor carrier was involved and is willing to pay the Andersons.

Carolina seeks to distinguish *Herrod* and *Fairmont* by pointing out that in each case, the uninsured motor carriers did not enjoy additional coverage from third-party insurers.  Here, Capital Trucking was treated as an additional insured under Imperium's policy for $1 million, which exceeded the $750,000 federally mandated minimum.  Carolina argues, therefore, that the instant case is more like *Lyles* and is distinguished from *Herrod* and *Fairmont* because Capital Trucking can look to Imperium's policy itself to satisfy its obligations, instead of looking at a payment made by a separate carrier.

Carolina's argument is inconsistent with the rationale set forth in the cases upon which it relies.  In *Yeates*, the Tenth Circuit discussed in great detail the public policy surrounding the regulatory requirements giving rise to MCS-90 endorsements.  *Yeates*, 584 F.3d at 878. The court explained that the MCS-90 endorsement is supposed to act as a safety net when other insurance is lacking and seeks to ensure that members of the public injured by interstate motor carriers have adequate means to recover for their injuries.  *Id.*

The key distinction is the existence of an individual judgment against a particular motor carrier.  The Tenth Circuit explained, "[n]othing precludes a motor carrier from paying the judgment itself or obtaining the payment from other insurance sources."  *Yeates*, 584 F.3d 881.

As it stands, the Andersons demanded $1 million from Imperium on behalf of Trucker's Association of Chicago and $750,000 from Carolina on behalf of Capital Trucking, but no monetary judgments have been entered.  If these demands were reduced to judgments, then Capital Trucking could certainly pay the judgment itself.  However, it would be unable to obtain payment from another source, as the Imperium policy would be exhausted from the same accident.  As the Tenth Circuit explained, "[t]he surety's liability is coextensive with that of the debtor and arises only when the debtor fails to discharge his duties or to respond in damages for that failure."  *Id.* (citing Peter A. Alces, The Law of Suretyship and Guaranty § 1:1 (2009)). Capital Trucking, therefore, must look elsewhere.  Thus, the two-part test in *Yeates* to establish the application of an MCS-90 endorsement is satisfied: Carolina's underlying insurance policy to which the endorsement is attached does not provide liability coverage, and the motor carrier's other coverage is insufficient or, as is the case here, non-existent.  *Yeates*, 584 F.3d at 861.

Carolina's argument rooted in *Lyles* that one carrier can satisfy its obligations under the insurance policy of another is correct as far as it goes.  However, *Lyles* is factually different from the instant case.  The court in *Lyles* expressly stated that whether a motor carrier meets its financial requirements depends on "the circumstances *that exist at the time of the accident.*" *Lyles*, 339 F.Supp.3d at 576 (emphasis added).  In *Lyles*, FTL was a subcontractor to K&K, and it was an insured under K&K's policy at the time of the accident.  *Id.* at 578-79.  That is, FTL obtained adequate coverage through National Casualty Company as an additional insured prior to engaging in interstate commerce, and its protection was in place when the accident occurred.

Here, however, Capital Trucking *was not* an additional insured on Imperium's policy at the time of the accident and was not treated as such until years after the collision.  Capital Trucking and Trucker's Association of Chicago are two independent motor carriers with no

privity between them, and each of them have been held liable as separate statutory employers and liable for the same injury.  In fact, Capital Trucking had no insurance whatsoever for the subject tractor at the time it was operated.  Capital Trucking, therefore, operated the tractor through Bagui in contravention of the regulations by failing to have adequate insurance while its leased vehicle was on the road.  In line with the Tenth Circuit's view in *Yeates* and *Herrod*, this is the exact scenario that the regulations address: uninsured tractor-trailers operating in interstate commerce.

Here, Capital Trucking and Carolina seek to evade their federally mandated requirements by attaching Capital Trucking to Imperium's policy after the fact.  This interpretation of the regulations would completely undermine the regulatory scheme.  Under Carolina's interpretation, multiple carriers involved in a single accident could avoid any obligation under the federal regulations so long as one of the carriers had insurance, simply by designation as an additional insured after the fact.  This interpretation of the regulations would undercut the protections afforded by the MCA.

The lack of a monetary judgment against Capital Trucking poses a roadblock for the Andersons, but one that can be easily overcome.  As stated, the regulations require that a monetary judgment be entered before an insurer's obligations under an MCS-90 endorsement become active.  *Integral Ins. Co.*, 930 F.2d at 260 (citing 49 C.F.R. § 387.15).  Carolina commenced the instant action prior to entry of a final monetary judgment, but after the state court had already found its insured to be vicariously liable.  The Andersons should not be penalized because Carolina "jumped the gun."  The significance of the timing of Carolina's motion is simply that its obligations under the MCS-90 have not yet been triggered but may be triggered once a judgment is entered, in which case Carolina would act as a surety obliged to

21

Capital Trucking.

Because Capital Trucking failed to meet its federally mandated minimum coverage requirement at the time of the accident, and because Capital Trucking cannot look to its underlying insurance policy or other sources to satisfy a potential judgment, the MCS-90 will obligate Carolina to act as a surety to Capital Trucking in the event that a monetary judgment is entered against it.  Accordingly, summary judgment for Carolina's second cause of action is denied, and summary judgment for the Andersons' third cause of action is granted.

### C.    Application of the Imperium Policy

The Andersons' first cause of action seeks a declaration that Imperium should not have accepted Capital Trucking's tender of defense.  Imperium moves to dismiss this claim on the basis of justiciability.

There is no justiciable controversy between the Andersons and Imperium as to Imperium's coverage over Capital Trucking.  Imperium has maintained, even before the commencement of this action and throughout this litigation, that its insurance policy issued to Trucker's Association of Chicago covers the accident.  [*see, e.g.*, December 27, 2018 letter from Imperium's counsel at Dkt. 35-3.]  Imperium has offered the full amount of its policy limit available, less the litigation expenses already expended.  Counsel for Imperium reaffirmed its offer as late as the January 12, 2021 hearing.  Any declaration that Imperium should not have accepted Carolina's tender of defense and, by extension, should not have offered to cover Capital Trucking under Imperium's insurance policy, has no bearing on the relationship between Imperium and the Andersons.  Put another way, whether or not Imperium accepted the tender, Imperium has still offered the maximum amount of its coverage available to the Andersons, and declaratory relief here would not change this outcome.

Similarly, Imperium's decision to accept Carolina's tender of defense of Capital Trucking in no way impacts whether Carolina's insurance policy or the MCS-90 endorsement apply to this accident. As explained above, Carolina's insurance policy does not cover the accident, but Carolina's obligations under the MCS-90 endorsement do apply. These considerations have nothing to do with Plaintiff's demand for declaratory relief against Imperium. The Andersons' counsel admitted as much at the January 12, 2021 hearing, conceding that Imperium's defense of Capital Trucking in this action would have no bearing on Carolina's coverage obligations. The Andersons' demand for declaratory relief against Imperium thus is not a justiciable case or controversy. Accordingly, the Andersons' first cause of action is dismissed.

### D.    Fraud and Civil Conspiracy

The Andersons' fourth, fifth, and sixth causes of action allege fraud and civil conspiracy to commit fraud against Carolina and Imperium. Carolina and Imperium move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and failure to properly plead fraud under Fed. R. Civ. P. 9(b).

The elements of fraud are well-settled. A plaintiff must show: a representation of material fact, falsity, scienter, reasonable reliance, and injury. *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 22 (2d Cir. 2015), *as amended* (Nov. 23, 2015) (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (N.Y. 1999)). "Scienter" is generally defined as "knowing or intentional misconduct." *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 45 (2d Cir. 1978), *amended sub nom. Rolf v. Blyth Eastman Dillon & Co.*, No. 77-7104, 1978 WL 4098 (2d Cir. May 22, 1978) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976)). Scienter may be characterized by the "intent to defraud, reckless disregard for the truth, or knowing use

23

of a device, scheme, or artifice to defraud." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)

(citing *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1301 (2d Cir. 1973).

Under Fed. R. Civ. P. 9(b), fraud must be pled with particularity, which requires that a

plaintiff "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2)

identify the speaker, (3) state where and when the statements (or omissions) were made, and (4)

explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v.

Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal citations omitted).

Scienter need not be specifically alleged to satisfy Fed. R. Civ. P. 9(b).  *Powers v. British Vita*,

57 F.4d 176, 184 (2d Cir. 1995).  Nevertheless, "'the relaxation of Rule 9(b)'s specificity

requirement for scienter must not be mistaken for a license to base claims of fraud on

speculation and conclusory allegations,' . . . and a plaintiff must still 'allege facts that give rise

to a strong inference of fraudulent intent.'"  *Vaughn v. Air Line Pilots Ass'n*, Case No. 08-4173,

2010 WL 3582661, at *2 (2d Cir. May 14, 2010) (citing *Shields v. Citytrust Bancorp, Inc.*, 25

F.3d 1124, 1128 (2d Cir. 1994)).

New York does not recognize a tort of "civil conspiracy" as an independent cause of

action.  *Reich v. Lopez*, 38 F. Supp. 3d 436, 460 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir.

2017).  Instead, "the charge of conspiracy in a civil action is merely the string whereby the

plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages

for any overt act or acts." *Id.* (citing *Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir.1956)).

Therefore, to establish civil conspiracy, a plaintiff "must demonstrate the underlying tort, plus

the following four elements: (1) an agreement between two or more parties; (2) an overt act in

furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan

or purpose; and, (4) resulting damage or injury." *Id.* at 461 (citing *Treppel v. Biovail Corp.,* Case No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *5 (S.D.N.Y. Aug. 30, 2005)).

The Andersons' appear to assert that Imperium committed fraud simply by virtue of the fact that Imperium appointed counsel to represent the defendants who tendered their defenses to Imperium's insured. The Andersons allege that Carolina committed fraud by stating that neither its insurance policy nor the MCS-90 endorsement would apply to the accident in an October 3, 2018 letter from Carolina's counsel. [Oct. 3, 2018 letter, at Dkt. 35-2.] The Andersons also allege that Imperium committed fraud by stating that they would cover Capital Trucking as a primary insurer, and by offering a global settlement on behalf of all defendants in a December 27, 2018 letter from Imperium's counsel. [Dec. 27, 2018 letter, at Dkt. 35-3.]

The Andersons fail to state a claim for fraud, let alone with the requisite degree of particularity. The statements which the Andersons allege constitute fraudulent representations were legal arguments advanced by attorneys representing Imperium and Carolina, not factual statements made by the alleged tortfeasors. "It is 'well settled' that 'fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." *Singh v. NYCLT 2009-A Trust*, Case No. 14 Civ. 2558 (RWS), 2016 WL 3692009, at *7 (S.D.N.Y. July 20, 2016), *aff'd* 683 F. App'x 76 (2d Cir. 2017) (citing 37 Am. Jur. 2D of Fraud & Deceit § 101 (2014)). Statements, and even misrepresentations, of law are generally regarded as opinions which cannot be relied upon absent special circumstances. *Id.* (internal citations omitted).

The Andersons only point to legal opinions when alleging fraud. For example, with regard to Carolina, the only statement to which the Andersons point is the October 3, 2018 letter from Carolina's counsel to explain his position why he believed Carolina was not obligated to provide coverage for the subject accident. Further, in accordance with Fed. R. Civ. P. 9(b), the

Andersons must show how or why these statements were fraudulent.  Instead, the Andersons merely summarily say they "knowingly and purposefully misrepresented certain facts."  These broad, conclusory statements are simply insufficient.

The Andersons similarly fail to show scienter.  The Andersons cannot establish Carolina's or Imperium's intention to deceive by pointing to attorneys making legal arguments on behalf of their clients.  It is true that those legal interpretations might have had a detrimental impact on the Andersons' recovery, but such is the nature of adversarial litigation.  The alleged scienter, therefore, is nothing more than a disagreement among counsel.

The Andersons also fail to show reasonable reliance.  Instead of relying on the alleged misrepresentations, the Andersons rejected Imperium's global settlement offer, made a $750,000 demand to Carolina, the full value of coverage under the MCS-90 agreement, and filed counterclaims against both Carolina and Imperium in the instant action.  *See Gordon & Co. v. Ross*, 84 F.3d 542, 544 (2d Cir. 1996) (citing *Barclay Arms, Inc.* v. *Barclay Arms Assocs.*, 74 N.Y. 2d 644 (N.Y. 1989)).  In *Barclay Arms*, the New York Court of Appeals affirmed the dismissal of a fraud cause of action where the plaintiff alleged misrepresentation, but failed to allege any actions it took in reliance on those statements.  *Barclay Arms, Inc.*, 74 N.Y.2d at 646-47.  The Andersons do not allege any facts to show that they relied in any way on Carolina's and Imperium's statements.  The Andersons, therefore, fail to show reliance.

Finally, the Andersons fail to show causation and damages.  Other than the cost of the instant litigation, the Andersons point to no cognizable damages, monetary or otherwise, as a result of Carolina's and Imperium's statements.  *See Woods v. Sieger, Ross & Aguire, LLC*, Case No. 11 Civ. 5698 (JFK), 2012 WL 1811628, at *9 (S.D.N.Y. May 18, 2012) (citing *Pope v. Saget*, 29 A.D.3d 437 (N.Y. App. Div. 1st Dept. 2006) ("the sum total of damages appears to

26

have been non-pecuniary aggravation and attorneys' fees.  The measure of damages in an action predicated on fraud is the actual pecuniary loss. Here, ... plaintiffs suffered no such loss.")).  The Andersons thus fail to show any damages suffered as a result of their reliance on statements made by Carolina or Imperium.

The Andersons have failed to state claim for fraud under Fed. R. Civ. P. 12(b), and their allegations fail to satisfy the heightened standard under Fed. R. Civ. P. 9(b).  Because the Andersons' claims for fraud fail, so too must their claim for civil conspiracy.  Accordingly, Carolina's and Imperium's motion to dismiss the Andersons' fourth, fifth, and sixth causes of action are granted.

## V.   CONCLUSION

For the reasons set forth above, Carolina's motion for summary judgment is **GRANTED** as to its first cause of action and **DENIED** as to its second cause of action.  The Andersons' motion for summary judgment is **GRANTED** to the extent that the Court determines that Carolina's MCS-90 endorsement applies to the underlying accident, and Carolina would be obligated under the endorsement to satisfy any money judgment against Capital Trucking obtained by the Andersons up to $750,000.  The Andersons' motion is **DENIED** in all other respects. Carolina's and Imperium's motions to dismiss the Andersons' fourth, fifth, and sixth causes of action are **GRANTED**. The Clerk is respectfully directed to terminate the motions at Dkt. 77, 81, and 84, and to close this case.

Dated: March 5, 2021
      White Plains, New York

**SO ORDERED**

Paul E. Davison, U.S.M.J.

27